## Herr v. Booten

*Thomas Hall,* for plaintiff.
*J. Michael Flanagan,* for defendant.
*Robert M. Frankhouser Jr.,* for defendant.
*Wiley P. Parker,* for defendant.
*Frank J. Lavery,* for defendant.

GEORGELIS, *J.,* February 7, 1989 — Before the court are the four defendants' motions for summary judgment. All of the parties have filed briefs, and the court has heard oral argument on the motions. They are, therefore, ready for disposition, and, for the reasons stated below, they will be granted.

## FACTS

The facts relevant to the disposition of defendants' motions are the following. Plaintiffs' decedent, Eric B. Herr, was born on January 17, 1963, and, on January 16, 1984, he was a junior at West Chester University and shared an apartment at 322 West Gay Street in West Chester with three of the defendants, John Raymer, Paul Booten and Rob Aspril Jr. Herr and Aspril had been classmates at Lancaster's McCaskey High School, and both began habits of consuming alcoholic beverages during their high school years.

At the university, Herr and Aspril became friends with Raymer, Booten and Orolin, and all of them developed significant alcoholic consumption habits. They would consume alcoholic beverages on as many as four or five days each week, and they would drink to the point of intoxication on as many as two or three days each week. It was not uncommon for Herr to become unruly and obstinate while

he was under the influence of alcohol. Herr, who along with Aspril had been suspended and placed on probation for a spring of 1982 alcohol-related incident, had become a seasoned and heavy alcohol drinker as of January 1984.

On January 16, 1984, Herr and his three roommate defendants decided to have a party to celebrate Herr's 21st birthday, and each contributed money for the purchase of beer. Raymer drove Herr to the beer distributor and Herr purchased two or three cases. The roommates began drinking the beer late in the afternoon at their apartment, and Orolin arrived later in the evening. Herr, Raymer and Orolin left to attend another party, at which they drank more beer and after which they stopped at Orolin's apartment for a bottle of Jack Daniels whiskey, which Orolin gave to Herr as a birthday gift. They returned to the Gay Street apartment at around 10:30 to 11:00 p.m., by which time other friends had arrived.

Herr drank the bottle of Jack Daniels in two drinks. Some of the discovery evidence indicates that he may have been encouraged to do so, but most of that evidence indicates that he was not. There is no evidence that he did not do so voluntarily, and there is some that indicates he was bragging he could drink the whole bottle himself and that some efforts were made to discourage him.

Subsequently, Herr became loud, violent, argumentative, anti-social and sick. Efforts were made to have him vomit, but he resisted them and stated that he would not permit anyone to see him do so. Ultimately, Herr was put into his bed, face down, in the early morning hours of January 17. Later in the morning at about 11:00 a.m., he was found dead in his bed, and a subsequent autopsy revealed the cause of death was acute ethanol poisoning, with

the alcohol contents of his blood at the time of the autopsy being 0.64 percent.

## COMPLAINT

Plaintiffs' complaint and amended complaint, which amended subparagraphs (e) and (g) of the complaint's paragraph 27, allege, inter alia, that all four defendants challenged Herr to drink the Jack Daniels whiskey. Plaintiffs seek recovery under the wrongful death and survival statues, and their complaint alleges two theories of liability — battery and negligence.

Count I alleges that defendants: provided Herr alcoholic beverages; intended an offensive touching and effect on Herr by providing him alcoholic beverages; intentionally, wantonly and recklessly provided such alcohol to cause his death; and knew or should have known that doing so would cause his death. It seeks recovery for the intentional tort of battery.

Count II states a cause of action in negligence. It alleges, inter alia, that defendants were negligent for: providing Herr alcoholic beverages; inducing him to drink them; failing to protect him; and undertaking to care for him.

## MOTIONS FOR SUMMARY JUDGMENT

Defendants' motions, in varying forms, seek summary judgments on the grounds that plaintiffs have failed to state causes of action in battery and in negligence. The identification and argument of the issues by each defendant in support of his respective motion differ, but together the motions present five issues for our determination. They are: (a) the appropriateness of summary judgments; (b) can plaintiffs maintain a cause of action for battery? (c)

were defendants negligent for providing alcoholic beverages to Herr? (d) were defendants negligent for challenging Herr to drink alcoholic beverages? and (e) were defendants negligent for failing to protect or assist Herr?

## DISCUSSION

### Summary Judgment

Summary judgment should be entered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law . . ." Pa. R.C.P. 1035(b). In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, and any doubts must be resolved against the entry of the judgment. *Yaindl v. Ingersoll-Rand Company,* 281 Pa. Super. 560, 422 A.2d 611 (1980). We will apply this standard to each of the issues discussed below.

### Battery

Plaintiffs' count in battery relies on the Restatement (Second) of Torts §13, which provides as follows:

"An actor is subject to liability to another for battery if

"(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and

"(b) a harmful contact with the person of the other directly or indirectly results." They contend,

in their brief, that the act was the providing of the alcohol to Herr by defendants and that the harm was Herr's death.

As to the element of intent, they contend that what harmful or offensive contact was intended presents a question of fact for a jury's determination. Similarly, they contend that the issue of consent, which they anticipated defendants would raise as a defense to the battery, poses a question of fact for a jury's determination, because they contend that Herr lacked the capacity to consent.

They also present the argument that, because the tort of battery does not require direct contact between Herr and defendants, the element of contact was met by defendants' providing Herr the alcohol, which ultimately came into contact with him and caused the alleged harm. For this proposition, plaintiffs rely on the Restatement (Second) of Torts §18, comment c of which states, in part, "[i]t is not necessary that the contact with the other's person be directly caused by some act of the actor. All that is necessary is that the actor intend to cause the other, directly or indirectly, to come in contact with a foreign substance in a manner which the other will reasonably regard as offensive."

Interestingly, even though all of the defendants seek summary judgments as to the battery and negligence counts, only one, Raymer, specifically addresses, in his motion or brief, plaintiffs' ability to maintain the battery cause of action. Raymer seeks judgment on the battery count on the ground that he did not encourage Herr's consumption of the Jack Daniels whiskey, as is alleged in the complaint.

None of the defendants argues the absence of the requisite elements for a cause of action in battery. None of the parties cites applicable Pennsylvania battery case law, except for one case cited by plain-

tiffs, which is cited in support of section 13 of the Restatement but which is factually distinguishable. Even so, we choose to address the viability of plaintiffs' cause of action in battery and the appropriateness of summary judgment as to that count, because we believe the issues involved would, at some future stage of this litigation, ultimately require resolution.

We agree with plaintiffs that the questions of intent and consent raise unresolved issues of fact which would preclude the entry of summary judgment. However, we do not agree with their proposition that the element of "contact" has been met under the facts of this case.

Plaintiffs have failed to cite, and we have been unable to uncover, any Pennsylvania authority for the adoption of section 18 of the Restatement (Second) of Torts. We are unwilling to conclude that "contact" was had between defendants and Herr by virtue of their providing him alcoholic beverages. If this conduct is to comprise "contact," we will leave it our appellate courts to so conclude. Therefore, we find that, as a matter of law, the element of contact is missing and, accordingly, we conclude that summary judgment is appropriate in favor of defendants on plaintiffs' battery count.

## Negligence

We will now address the three issues raised by defendants in their attacks on plaintiffs' negligence count. The first negligence theory set forth by plaintiffs is that defendants were negligent in providing alcohol to Herr. Defendants argue that Herr, under Pennsylvania common law, was 21 years of age on the day before his birthday and that, under *Klein v. Raysinger,* 504 Pa. 141, 470 A.2d 507 (1983), they cannot be liable as social hosts for providing Herr alcoholic beverages.

*Klein* was decided by our Supreme Court on the

same day as it decided *Congini v. Portersville Valve Co.,* 504 Pa. 157, 470 A.2d 515 (1983), and the two cases provide the current status of the law in Pennsylvania on the liability of a social host, who serves alcoholic beverages to an adult or minor, respectively, who then becomes intoxicated and injures himself or another. *Klein* held that, in the case of an ordinary able-bodied man, it is the consumption of alcohol, rather than the furnishing of it, which is the proximate cause of any subsequent occurrence and that there can be no liability on the part of a social host who serves alcoholic beverages to his adult guests. *Klein* at 148, 470 A.2d at 510-1 (1983). *Congini* held that a host, who serves alcohol to a point of intoxication to a person less than 21 years of age, is negligent per se and can be held liable for injuries proximately resulting from the minor's intoxication. *Congini* at 162-3, 470 A.2d at 518 (1983).

Plaintiffs' response to defendants' argument is that Herr was 20 years of age on the day defendants provided him the alcohol, that is the day before his birthday, and that, under *Congini,* defendants are liable. In the alternative, plaintiffs respond by arguing that, if the court holds that Herr was an adult at the time of the alleged negligence, the *Klein* holding is not applicable because the facts in this case do not present a social host setting. They contend that this was a "challenge" party at which defendants "intentionally set out to get Eric Herr drunk."

Plaintiffs' position is untenable for two reasons. First, it interjects intent into a negligence cause of action, and, second, it asks us to find that the instant facts create a social host setting for the purposes of applying *Congini,* but not so for the purposes of applying *Klein.*

Addressing the question of Herr's age, we note that our Supreme Court, in *Firing v. Gephart,* 466

Pa. 560, 565, 353 A.2d 833, 836 (1976), stated "that it is well established at common law that one is deemed to attain a given age on the day before his birthday." Accordingly, we hold that Herr was 21 on the day of the alleged negligence. With this finding and with the application of the holding in *Klein,* we believe that defendants are entitled to summary judgment on plaintiffs' negligence count, to the extent it alleges that defendants negligently provided alcohol to Herr.

Even were we to adopt the plaintiffs' position on the issue of Herr's age, we believe the *Klein* and *Congini* rationale would lead us to a similar result. As noted above, *Klein* held that, in the case of an ordinary able-bodied man, it is not the furnishing of the alcohol but its consumption which is the proximate cause of any subsequent occurrence. The *Congini* court found liability, primarily because of its concern that a minor, who is furnished intoxicants, is incompetent to handle the effects of alcohol. We do not believe that Eric Herr, based on his history of alcohol abuse, falls within the category of individuals that the *Congini* court intended to protect. He was a conditioned and seasoned drinker, who was so proud of his drinking abilities that it would be difficult to imagine that he required any encouragement to consume alcoholic beverages. As far as the consumption of alcoholic beverages is concerned, we believe the evidence establishes that Herr was far from incompetent.

The next theory for negligence liability proffered by plaintiffs is that defendants challenged and induced Herr to consume the Jack Daniels whiskey. Defendants seek summary judgment as to these allegations and contend that there is no liability in Pennsylvania for challenging or inducing an indi-

vidual to undertake a dangerous act likely to cause harm. Plaintiffs and defendants rely on *Yania v. Bigan,* 397 Pa. 316, 155 A.2d 343 (1959), which was the focus of this court's decision in *Koch v. Wilson,* 71 Lancaster L. Rev. 127 (1988), also relied on by plaintiffs and defendants.

In *Yania,* the decedent, who was a business visitor at defendant's strip-mining operation, was assisting defendant when he deliberately jumped into a water-filled area and drowned. The complaint alleged that the decedent's death was caused by defendant's acts of "urging, enticing, taunting and inveigling" the decedent to jump into the water.

The *Yania* court affirmed the trial court, which had sustained the defendant's preliminary objections in the nature of a demurrer and held:

"The complaint does not allege that Yania slipped or that he was pushed or that Bigan made any *physical* impact upon Yania. On the contrary, the only inference deducible from the facts alleged in the complaint is that Bigan, by the employment of cajolery and inveiglement, caused such a *mental* impact on Yania that the latter was deprived of his volition and freedom of choice and placed under a compulsion to jump into the water. Had Yania been a child of tender years or a person mentally deficient then it is conceivable that taunting and enticement could constitute actionable negligence if it resulted in harm. However to contend that such conduct directed to an adult in full possession of all his mental faculties constitutes actionable negligence is not only without precedent but completely without merit." *Yania* at 320, 155 A.2d at 345. (emphasis in original)

We agree that the *Yania* holding controls this theory of plaintiffs' negligence count. The question for our determination is whether the alleged chal-

lenging and inducing "caused such a mental impact" on Herr that he "was deprived of his volition and freedom of choice and placed under a compulsion" to drink the Jack Daniels and whether he was a "child of tender years or a person mentally deficient." We do not believe that, under the circumstances involved in this case, Herr falls within the category of individuals to whom the *Yania* court intended to provide redress for the alleged negligent conduct of defendants.

First of all, we do not believe that defendants' conduct caused such a mental impact on Herr that he was deprived of his volition and freedom of choice and placed under a compulsion to drink the whiskey. The discovery evidence establishes that Herr was a conditioned drinker, who was apparently quite proud of his abilities in that area. There is no evidence that establishes that defendants' encouragement caused any mental impact on Herr. If there were any impact on Herr, it was as a result of his beer drinking, which he undertook voluntarily earlier in the evening.

Furthermore, there is no testimony to support a conclusion that defendants' conduct compelled Herr to drink the whiskey. In fact, there is evidence that, even after he consumed the whiskey, he was in control of himself sufficiently to thwart the efforts made to have him vomit. Also, it was not unusual for Herr to become unruly and obstinate when drunk, which would indicate that he would have been even less likely to be swayed by anyone while in such a condition. We are simply not convinced that Herr was deprived in any way of his freedom of choice and that he was compelled to drink the whiskey.

Herr was clearly not a child of tender years, and we are not willing to accept plaintiffs' proposition that he was "mentally deficient" within the *Yania*

holding, as a result of his drinking. We do not believe that is the type of mental deficiency intended by *Yania*. Furthermore, because of Herr's history of repeated intoxication, we cannot imagine any individual in a better situation to appreciate and understand the consequences of the heavy drinking he had done in the past and on the night before his death.

As we noted in *Koch, supra,* when we concluded that it would be hard to believe that a reasonable 17-year-old could not have fully known the obvious consequences of his conduct in that case, we simply cannot imagine that Herr could not have understood the serious consequences of his conduct the night before his death. It was not the encouragement of defendants that caused his death, but it was instead his love for alcohol and his inability to control his consumption of it. We do not believe plaintiffs can prove their allegations that defendants encouraged Herr to consume the whiskey, but, even if they could, defendants are entitled to summary judgment as to these allegations in the negligence count, because, as defendants contend, Pennsylvania does not recognize liability for such conduct.

We turn now to the third and final theory of negligence liability proffered by plaintiffs, namely that defendants were negligent for failing to adequately care for Herr. For this theory, plaintiffs rely of sections 321 and 322 of the Restatement (Second) of Torts. The question of the applicability of section 321 is readily resolved. Even though plaintiffs urge us to adopt that section, we are not generally in the habit of creating new law. We are even more reluctant to do so in this case, when we note that our Superior Court, in *Glick v. Martin and Mohler Inc.,* 369 Pa. Super. 428, 435, 535 A.2d 626, 629 (1987), stated, "[t]he Supreme Court of Pennsylvania has never adopted section 321 as the law of

Pennsylvania, and as the intermediate appellate court we decline to do so." Accordingly, we hold that section 321 does not currently provide a viable theory of liability in Pennsylvania, and, therefore, to the extent plaintiffs rely on it, defendants are entitled to summary judgment.

Section 322 reads as follows:

"Duty to Aid Another Harmed by Actor's Conduct —

"If the actor knows or has reason to know that by his conduct, whether tortious or innocent, he has caused such bodily harm to another as to make him helpless and in danger of further harm, the actor is under a duty to exercise reasonable care to prevent such further harm."

Our research has undercovered only one Pennsylvania appellate case which addresses section 322, and it is *Yania v. Bigan, supra.*

In referring to sections 321 and 322, the *Yania* court stated:

"The language of this court in *Brown v. French,* 104 Pa. 604, 607, 608, is apt: 'If it appeared that the deceased, by his own carelessness, contributed in any degree to the accident which caused the loss of his life, the defendants ought not to have been held to answer for the consequences resulting from that accident. . . . He voluntarily placed himself in the way of danger, and his death was the result of his own act . . . That his undertaking was an exceedingly reckless and dangerous one, the event proves, but there was no one to blame for it but himself.' "

This language is painfully applicable to the facts in the instant case. As noted in our earlier recitation of the relevant facts, there is no evidence to indicate that Herr did other than voluntarily consume the whiskey. We believe the evidence establishes that he more than contributed, in a significant degree, to .

his death, that he voluntarily placed himself in the way of the danger, that his death was the result of his own act, that his undertaking was an exceedingly reckless and dangerous one and that there was no one to blame for it but himself. Defendants are entitled to summary judgment as to the portion of the negligence count which alleges defendants' failure to care for Herr. We note that, even though defendants discuss additional sections of the Restatement (Second) of Torts, those sections are not relied on by plaintiffs in their brief, and we will not, therefore, address them.

Accordingly, we enter the following

## ORDER

And now, February 7, 1989, for all of the reasons stated in the foregoing opinion, the motions for summary judgment of defendants — Paul Booten, John Raymer, Robert Aspril Jr. and Alex Orolin — are granted. Summary judgment on plaintiffs' complaint and amended complaint is entered in favor of all of the defendants and against plaintiffs.